CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 08, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| AMBER NICOLE HELTON, ) | |
|     Plaintiff, ) | Civil Action No. 7:24-cv-00484 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| DREAMA OWENS, *et al.*, ) | Chief United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

The plaintiff, Amber Nicole Helton, filed this civil rights action pursuant to 42 U.S.C. § 1983. Helton was a Virginia inmate proceeding *pro se* at the time this action was filed. Helton has sued six defendants in this action. Before the court are a motion to dismiss filed by Dreama Owens (Dkt. No. 15), a motion to dismiss filed by Trish McCoy (Dkt. No. 17), and a motion for summary judgment filed by Shawn Dale Boyd, Margie Coleman, Gloria Kelley, and Crystal Large (Dkt. No. 23). Helton did not respond to any of these motions, which motions will be granted.

I.  BACKGROUND

**A. Plaintiff's Allegations**

Helton's allegations in a verified complaint relate to her incarceration at the Southwest Virginia Regional Jail in Haysi, Virginia. (Compl., Dkt. No. 1.) Helton alleges that she was not allowed to have her seizure pill or her psychiatric medications for three days as some type of punishment. She states that Nurse Gloria Kelley came to her cell with a prison guard and "named of my meds in front of others that would be taken from me." (Compl. 2.) This part of the complaint does not specify any dates.

Plaintiff then alleges that on June 27, 2024, she wrote a Mental Health request stating that Nurse Boyd[1] took all of her medications because of an in-house charge for refusing a drug screen. Helton states there was a response about the policy, and her medications had been restarted, but Nurse Boyd "misinterpreted things." (Compl. 4.)

On June 28, 2024, plaintiff states that she was charged with the same thing as the day before, and at 5:00 p.m., Nurse Gloria Kelley came to her door with guard Nancy Stone and told her that all of her medications would be stopped. That night, Helton wrote another mental health request pertaining to her seizure pill and blood pressure medication. Helton received a response stating that mental health staff would visit her and conduct an assessment. On June 30, Nurse "M.M."[2] brought a "double dose" of Helton's seizure medication that she had been without for three days.

As of July 17, 2024, Helton states that she still had not been getting all of her medications. (Compl. 5.)

**B. Facts in Support of Motion for Summary Judgment**

Defendants Margie Coleman, LPN, Gloria Kelly, LPN, Shawn Dale Boyd, LPN, and Crystal Large, NP, collectively the Medical Defendants, move for summary judgment. In support of their motion, the Medical Defendants filed affidavits by Large, Boyd, and Coleman, and 105 pages of medical records. (Exs. A, B, C, D, Dkt. Nos. 24-1, 24-2, 24-3, 24-4.)

Large is a licensed nurse practitioner who has worked in corrections since 2013. Boyd is a registered nurse, and Coleman is a licensed practical nurse. All three provided medical care to Helton at Haysi.

---

[1] Plaintiff's complaint incorrectly identifies defendant Boyd as "Shawndell Boyd".

[2] This is a reference to defendant Marge Coleman, who is incorrectly listed in plaintiff's complaint as "Marge Mullins" or "M.M."

Helton arrived at Haysi on November 2, 2023. Upon her arrival, Helton was seen by a nurse for complaints about redness and swelling on her right middle finger. (Ex. D at 35.) Nurse Large ordered Bactrim. After further evaluation, the finger was documented as "very swollen with bluish tint" and with redness from the finger to the wrist. (*Id.*) Nursing staff soaked the finger in warm water and applied a dressing. NP Large ordered that Helton be transferred to Norton Community Hospital. There, an abscess was drained, and Helton returned to Haysi the same day. (*Id.*)

Back at Haysi, Helton reported a history of seizures during her intake screening. (Ex. D at 1–8.) Helton stated that she had been diagnosed with a seizure disorder in 2020 and her last seizure prior to incarceration had occurred five months prior in June 2023. Helton denied any hospitalizations related to her seizures. Also, Helton did not identify any medications that she was taking for the seizures and did not describe the type of seizures. Providers at the Jail learned later that Helton was prescribed Keppra, an anticonvulsant, from an outside medical provider. She did not report that she was on this medication during her receiving screening. Helton also reported methamphetamine use and a ten-year history of smoking a half pack of cigarettes per day. (*Id.* at 6.) She reported using methamphetamines within the last 14 days and denied participation in any Medication Assisted Treatment (MAT) program. Further, Helton denied mental health concerns. Helton's 14-day assessment was scheduled for November 17, 2023.

On November 11, 2023, Helton was seen by a qualified mental health provider (QMHP). (Ex. D at 38.) Plaintiff reported a history of methamphetamine and Suboxone use and that her longest period of sobriety lasted two years. Helton requested an appointment with an addiction treatment center upon release, and the MHP noted this would be the plan for this patient along with mental health appointments as needed. (*Id.*) On November 17, 2023, Helton refused a

3

comprehensive 14-day assessment, but on December 28, 2023, she met with psychiatrist Raymond Iglecia-Fernandez, MD. (*Id.* at 11, 38.) Dr. Iglecia discontinued Vistaril and prescribed Buspar and Remeron.

On June 27, 2024, Nurse Boyd saw Helton when jail staff brought her to the medical unit for a drug screen. (Boyd Aff. ¶ 5.) Helton refused the drug screen. The officer who escorted Helton to the medical unit advised Nurse Boyd that jail staff considered a refused drug screen to be a failed drug screen. (*Id.* ¶ 6.) It is not policy or practice for the medical department to discontinue medications due to a refused drug screen. (Large Aff. ¶ 14.) Instead, Dr. Iglecia had instructed medical staff to discontinue psychiatric medications for any patient found to be hoarding medication until a provider could assess the patient and determine an alternative treatment plan, if necessary. (*Id.* ¶ 7.)

Based on this understanding, Nurse Boyd advised Helton that her psychiatric medications would be discontinued due to her refused drug screen. (Boyd Aff. ¶ 8.) She did not advise plaintiff that her Keppra would be discontinued because this is not a psychiatric medication. Nurse Boyd did not herself discontinue any of plaintiff's medications. Instead, she left a note regarding the refused drug screen in a written report at the nurses' station for the incoming nursing shift. (*Id.* ¶ 9.)

On the same date, Helton submitted a grievance regarding the discontinuation of her medications. (Ex. D at 76.) She stated that "nurse Shawn" had informed her that nursing was no longer allowed to provide her medications because of a house charge for a refused drug screen. Helton questioned why her medications could be "taken" from her for "something that has nothing to do with [her] meds." (*Id.*) Nursing staff advised that the doctor had stated that medications would be discontinued for 90 days if patients were caught "cheeking", stockpiling,

4

or otherwise abusing mental health medications. (*Id.*) Staff explained that this was separate from jail charges and that Nurse Boyd had misinterpreted the doctor's instruction. Nursing staff advised Helton that her medications would be restarted. (*Id.*)

However, on or around June 28, 2024, Helton was caught hoarding medications. (Ex. D at 28.) Margie Coleman, LPN, discontinued several of Helton's medications, documenting the reason as "caught hoarding meds." (Coleman Aff. ¶ 9.) Coleman inadvertently discontinued the Keppra, even though Keppra is not a psychiatric medication. Three days later, on July 2, 2024, NP Large noticed the inadvertent discontinuation and immediately restarted the Keppra, advising LPN Coleman of the issue to ensure against recurrence. (*Id.* ¶¶ 10, 11.) Helton did not suffer any seizures between June 28, 2024, and July 2, 2024, or at any time during her incarceration at Haysi. (Ex. D.)

On July 18, 2024, Helton was seen by a QMHP. She denied any mental health concerns. Her appetite and energy were good, and she denied anger, paranoia, and hallucinations. She reported her anxiety was high be denied panic attacks. Helton reported recent leg pain, which she believed was related to Buspar. The psychiatrist renewed her prescriptions for Remeron and Buspar. Helton had no further complaints. (Ex. D at 37.)

I. ANALYSIS

**A. Motions to Dismiss and Lack of Allegations Pertaining to Defendants**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard

5

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

In addition, *pro se* plaintiffs are held to a "less stringent standard" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *See Manigault v. Capital One, N.A.*, CIVIL NO. JKB-23-223, 2023 WL 3932319, at *2 (D. Md. June 8, 2023). While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

Dreama Owens and Trish McCoy filed separate motions to dismiss because Helton's complaint fails to allege their personal involvement in plaintiff's claims. Section 1983 provides a cause of action against a person who, acting under color of state law, violates the constitutional rights of another. *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). A claim under § 1983 requires factual details about each defendant's personal involvement in the violation of the plaintiff's rights. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Iqbal*, 556 U.S. at 676 (noting that liability under § 1983 "requires personal involvement").

6

Aside from being listed in the caption of the complaint, there are no specific facts pertaining to Owens or McCoy alleged in the complaint. *See Newkirk v. Cir. Ct. of City of Hampton*, No. 3:14-cv-372-HEH, 2014 WL 4072212, at *2 (E.D. Va. Aug. 14, 2014) (finding that the complaint was subject to summary dismissal where plaintiff made no factual allegations against the named defendants within the body of the pleading). Moreover, general and collective allegations against groups of defendants fail to allege a plausible claim. *Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023). For these reasons, the motions to dismiss will be granted.

**B. Summary Judgment is Warranted When There is No Deliberate Indifference**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a summary judgment motion, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in the pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate the existence of specific, material facts that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248.

Helton's primary claim is that the Medical Defendants were deliberately indifferent to the serious medical needs that were treated through her various medications. It is unclear if Helton was a pretrial detainee or a convicted prisoner at the time of the allegations set forth in the complaint.³ The constitutional claims of convicted inmates arise under the Cruel and Unusual Punishment clause of the Eighth Amendment, whereas pretrial detainees' claims are examined under the Due Process clause of the Fourteenth Amendment. In either event, the Medical Defendants are entitled to summary judgment.

An Eighth Amendment claim for deliberate indifference to serious medical needs includes both an objective and subjective element. *Mays v. Sprinkle*, 992 F.3d 925, 300 (4th Cir. 2021) (citing *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)). The objective element requires a "serious" medical condition either "diagnosed by a physician as mandating treatment" or otherwise "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). As to the subjective element, "the prison official must have acted with a 'sufficiently culpable state of mind.'" *Mays*, 992 F.3d at 300 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The required state of mind is that of "deliberate indifference . . . 'to inmate health or safety.'" *Scinto*, 841 F.3d at 225 (quoting *Farmer*, 511 U.S. at 834). "And deliberate indifference requires that the official have 'had actual subjective knowledge of both inmate's serious medical condition and the excessive risk posed by the official's action or inaction.'" *Mays*, 992 F.3d at 300 (quoting *Jackson*, 775 F.3d at 178). "[D]eliberate indifference requires a showing that the defendants . . . actually knew

---

³ The medical record contains a doctor's reference to plaintiff being sentenced on July 18, 2024, but it is unclear whether this reflects the actual date of conviction or sentencing or is just the date when plaintiff discussed the issue with her provider. (Ex. D at 37.)

8

of and ignored a detainee's serious need for medical care." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004).

The Eighth Amendment "has no application" where there has been "no formal adjudication of guilt against [an incarcerated person] at the time he required medical care," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983), so deliberate indifference claims for pretrial detainees arise under the Due Process Clause of the Fourteenth Amendment. *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). To state such a claim, a pretrial detainee must show that,

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short*, 87 F.4th at 611. Unlike an inmate bringing a claim under the Eighth Amendment, a pretrial detainee need not "show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.* Rather, "it is sufficient that the plaintiff show that . . . the defendant should have known of that condition and that risk, and acted accordingly." *Id.*

If Helton's claim is considered under the due process clause, the Medical Defendants are entitled to summary judgment because their misadministration of medication, particularly the mistake of briefly pausing Helton's seizure medication, was not intentional, knowing, or reckless. Instead, it was a negligent misunderstanding of the rules pertaining to hoarding of medication. It is "not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Martin v. Caroal*, Case No. 7:25-cv-00264, 2025

9

WL 1373013, at *2 (W.D. Va. May 12, 2025) (citing *Short*, 87 F.3d at 611–12). Helton also does not allege that any harm occurred from having her seizure medication withheld for three days, and the medical records reflect that Helton did not have any seizures during this time when she was at the jail.

If Helton's claim is considered under the Eighth Amendment, the Medical Defendants are entitled to summary judgment for similar reasons. The subjective component is an "exacting standard" that is not met by "mere negligence or even civil recklessness." *Jackson*, 775 F.3d at 178. Again, the mistake was inadvertent and a far cry from subjective, deliberate indifference.

For these reasons, the Medical Defendants are entitled to summary judgment on Helton's deliberate indifference claim.

## C.  Helton's HIPAA Claim Fails

Helton has also attempted to bring a claim for violation of the Health Insurance Portability and Accountability Act "HIPAA". Her complaint references the statute when she describes how Nurse Kelly listed her medications in the presence of other inmates at the jail. HIPAA, however, does not create a private cause of action. *See Davis v. Keller*, Case No. 7:23-cv-00593, 2024 WL 4326544, at *7 (W.D. Va. Sept. 27, 2024) (citing *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021)). In the absence of any actionable § 1983 claims, the Medical Defendants are entitled to summary judgment on this claim.

## III.  CONCLUSION

For the reasons stated herein, defendants' motions to dismiss and for summary judgment will be granted in an appropriate order.

Entered: September 8, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge